IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MEDIA CONTENT PROTECTION LLC, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 20-1243 (CFC) |
| INTEL CORP., | ) ) ) | |
| Defendant. | ) ) | |

**DEFENDANT INTEL CORP.'S OPENING BRIEF IN SUPPORT
OF ITS MOTION FOR SUMMARY JUDGMENT OF
INVALIDITY UNDER 35 U.S.C. § 101 (MSJ NO. 1)**

OF COUNSEL:

Chad S. Campbell
PERKINS COIE LLP
2525 E. Camelback Road, Suite 500
Phoenix, AZ  85016
(602) 351-8000

Christina J. McCullough
Antoine McNamara
Theresa H. Nguyen
PERKINS COIE LLP
1301 Second Avenue, Suite 4200
Seattle, WA  98101-3804
(206) 359-8000

Sarah E. Piepmeier
PERKINS COIE LLP
505 Howard Street, Suite 1000
San Francisco, CA  94105-3204
(415) 344-7000

August 22, 2025

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jennifer Ying (#5550)
Cameron P. Clark (#6647)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jying@morrisnichols.com
cclark@morrisnichols.com

*Attorneys for Defendant Intel Corp.*

Daniel T. Keese
PERKINS COIE LLP
1120 NW Couch Street, 10th Floor
Portland, OR  97209-4128
(503) 727-2000

**TABLE OF CONTENTS**

I.    NATURE AND STAGE OF THE PROCEEDINGS.....................................1

II.   SUMMARY OF THE ARGUMENT ...................................................1

III.  FACTUAL BACKGROUND.............................................................2

IV.   LEGAL STANDARDS ..................................................................3

      A.    Patent Eligibility Under 35 U.S.C. § 101................................3

      B.    Summary Judgment...............................................................4

V.    ARGUMENT..............................................................................4

      A.    Step one: The claims are directed to the abstract idea of
            authenticated content transfer, not any technological
            improvement...........................................................................4

            1.    The claims are directed to authenticated content transfer .........4

            2.    This Court already held that authenticated content
                  transfer is abstract, not an improvement in technology.............7

            3.    Federal Circuit cases confirm that the claims are directed
                  to an abstract idea...................................................................11

      B.    Step 2: The claims do not recite "significantly more" than the
            abstract idea of authenticated content transfer ....................14

      C.    Claim 1 of the '809 patent is representative.........................17

VI.   CONCLUSION.............................................................................17

# TABLE OF AUTHORITIES

**Cases**                                                               **Page(s)**

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l,*
573 U.S. 208 (2014)................................................................*passim*

*BSG Tech LLC v. Buyseasons, Inc.,*
899 F.3d 1281 (Fed. Cir. 2018) ..........................................................14

*CosmoKey Sols. GmbH & Co. KG v. Duo Sec. LLC,*
15 F.4th 1091 (Fed. Cir. 2021) ...........................................................13

*Data Engine Techs. LLC v. Google LLC,*
906 F.3d 999 (Fed. Cir. 2018) ..............................................................3

*Elec. Power Grp., LLC v. Alstom S.A.,*
830 F.3d 1350 (Fed. Cir. 2016) ...............................................3, 4, 6, 13

*Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.,*
955 F.3d 1317 (Fed. Cir. 2020) ..........................................................12

*In re AuthWallet, LLC,*
No. 2022-1842, 2023 WL 3330298 (Fed. Cir. May 10, 2023)...........................9

*Media Content Prot. LLC v. Realtek Semiconductor Corp.,*
No. CV 20-1247-CFC, 2025 WL 2105785 (D. Del. July 28, 2025) ..........*passim*

*Mobile Acuity Ltd. v. Blippar Ltd.,*
110 F.4th 1280 (Fed. Cir. 2024) ..........................................................17

*Move, Inc. v. Real Est. All. Ltd.,*
721 F. App'x 950 (Fed. Cir. 2018) ......................................................16

*Prism Techs. LLC v. T-Mobile USA, Inc.,*
696 F. App'x 1014 (Fed. Cir. 2017) ..........................................5, 12, 16

*RecogniCorp, LLC v. Nintendo Co.,*
855 F.3d 1322 (Fed. Cir. 2017) ........................................................5, 6

*Sanderling Mgmt. Ltd. v. Snap Inc.,*
65 F.4th 698 (Fed. Cir. 2023) .........................................................9, 12

*Soundclear Techs., LLC v. Amazon.com, Inc.*,
   No. 24-CV-01283, 2024 WL 5237648 (E.D. Va. Nov. 8, 2024) ......................13

*Universal Secure Registry LLC v. Apple Inc.*,
   10 F.4th 1342 (Fed. Cir. 2021) ..........................................................5, 12, 15, 16

**Statutes**

35 U.S.C. § 101 .................................................................................*passim*

**Rules**

Fed. R. Civ. P. 56(a)......................................................................................4

## TABLE OF EXHIBITS

| Exhibit | Description |
|---------|-------------|
| A | U.S. Patent No. 9,436,809 |
| R | U.S. Patent No. 10,298,564 |
| AF | Excerpts from the July 8, 2025 oral argument from *Media Content Protection LLC v. Realtek Semiconductor Corp.,* C.A. No. 20-1247 (CFC) (D.I. 210). |

# I. NATURE AND STAGE OF THE PROCEEDINGS

Fact and expert discovery have closed. Intel moves for summary judgment of invalidity of U.S. Patent Nos. 9,436,809 and 10,091,186 under 35 U.S.C. § 101.

# II. SUMMARY OF THE ARGUMENT

This Court already held claims like the ones asserted here to be patent ineligible. *Media Content Prot. LLC v. Realtek Semiconductor Corp.*, No. CV 20-1247-CFC, 2025 WL 2105785 (D. Del. July 28, 2025). The asserted claims,[1] of which claim 1 of the '809 patent is representative, recite nothing more than the abstract idea of authenticated content transfer, with no improvement in technology. The claims rely on generalized, well-known computer components operating in their usual manner—a "first device," a "second device," a "memory," and a "processor" configured to perform standard authentication functions.

Further, the claims lack any inventive concept to transform the abstract idea into patent-eligible subject matter. Rather, the specification admits that every step in the claimed process was well-known. The claims merely combine known functionality in an expected way, which cannot confer eligibility. Because there is no genuine fact dispute, summary judgment of invalidity under § 101 should be granted.

---

[1] The asserted claims are claims 1-2, 4-6, 9, 11-12, and 14-15 of the '809 patent and claims 1-7 and 9-15 of the '186 patent. CSOF ¶1.

## III.    FACTUAL BACKGROUND

Claim 1 of the '809 patent recites a "first device for controlling delivery of protected content to a second device," including a "memory" and a "processor." Ex-A(claim 1). The first device's processor is arranged to receive a "certificate of [a] second device" and check for compliance with rules. *Id.* If the second device is compliant, the first device "provide[s] a first signal to the second device" and receives a "second signal from the second device." *Id.* Then the first device "determine[s] whether the second signal is derived from a secret known by the first device" and whether the "time difference between providing the first signal and receiving the second signal is less than a predetermined time." *Id.* If the received signal was derived from the secret and received within the predetermined time, the first device provides protected content to the second device. *Id.* The claim does not recite any specialized components or protocols for performing these functions and, therefore, does not claim an improvement in computer technology.

The specification similarly lacks any improvement in technology. It describes the first device in generic terms without recitation of specific or specialized components configured to perform the claimed functions. It does not explain *how* the first device performs the claimed certificate analysis, signal exchanges, secret exchange, determination of signal modification using a secret, determination of round-trip time, or provision of protected content. *E.g.*, CSOF ¶¶17-31. Instead, it

uses admittedly standard computer components and well-known protocols in a conventional way. *E.g.*, *id.* ¶17 ("[t]echnology to perform device authentication and encrypted content transfer is available"); *id.* ¶18 (prior art described "distance-bounding protocols with public-key identification schemes" where the "distance measurement is … based on time measurement using challenge and response bits"); *id.* ¶¶21, 23, 27 (relying on industry standards such as "ISO 9798 and 11770"); *id.* ¶¶24-26 (describing known signaling and encryption protocols).

## IV.    LEGAL STANDARDS

### A.    Patent Eligibility Under 35 U.S.C. § 101

In *Alice*, the Supreme Court articulated a two-step framework for evaluating patent eligibility under § 101. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 217–18 (2014). At step one, the court examines whether a claim as a whole is "directed to" an abstract idea. *Id.*; *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016). Claims that use computers merely as a tool to implement an abstract idea remain abstract. *Elec. Power*, 830 F.3d at 1354.

If the claims are directed to an abstract idea, *Alice* step two asks whether the claims contain an "inventive concept" that provides "significantly more" than the abstract idea. 573 U.S. at 217-18. "[I]nsignificant extra-solution activity," such as using generic computers to carry out the abstract idea, are insufficient. *Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999, 1010, 1012 (Fed. Cir. 2018); *see also Alice*, 573 U.S. at 222.

## B.    Summary Judgment

A court grants summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## V.    ARGUMENT

There can be no genuine dispute that the asserted claims of the '809 and '186 patents are abstract, particularly in light of this Court's recent ruling that claims of the related '564 patent[2] are ineligible under § 101. *Realtek*, 2025 WL 2105785; CSOF ¶¶5, 10. Here, the claims are directed to the abstract idea of authenticated content transfer using standard computer components.    The claims lack any transformative inventive concept; each element was admittedly well-known and the combination yields nothing more than the sum of its parts.

### A.    Step one: The claims are directed to the abstract idea of authenticated content transfer, not any technological improvement

#### 1.    The claims are directed to authenticated content transfer

*Alice* step one asks what the claims are "directed to," that is, the "'focus' of the claims, their 'character as a whole.'"    *Elec. Power*, 830 F.3d at 1353.  "In cases involving authentication technology, patent eligibility often turns on whether the claims provide sufficient specificity to constitute an improvement to computer

---

[2] Ex-R.

- 4 -

functionality itself." *Universal Secure Registry LLC v. Apple Inc.*, 10 F.4th 1342, 1346 (Fed. Cir. 2021). Here, the claims recite no improvement to computer functionality and are instead directed to the abstract idea of authenticated content transfer, i.e., sending protected information between devices if the devices' communication can satisfy a round-trip time threshold during an authentication process that includes exchanging certificates.

Claim 1 of the '809 patent recites a "first device" with a "processor arranged to" perform certain functions, namely, to receive a certificate and check for compliance, exchange signals with the second device, determine whether the received signal was modified by a known secret, determine if the round-trip time of the signal exchange is below a predetermined time, and provide protected content. Ex-A(7:7-29). The claim, therefore, combines three abstract ideas—authentication, timed challenge-and-response using a shared secret, and providing content. *See, e.g.*, *Universal Secure*, 10 F.4th 1342; *Prism Techs. LLC v. T-Mobile USA, Inc.*, 696 F. App'x 1014 (Fed. Cir. 2017); *Realtek*, 2025 WL 2105785 at *3-6; *cf. RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017) (combining abstract ideas is still abstract).

A secure package-delivery locker is an apt analogy. A visitor scans her driver's license at the locker, which verifies the visitor's identity (authentication). The locker sends a secret code to the visitor, who then inputs the code into the locker

for verification before the code times out (timed challenge and response using a shared secret). Finally, the locker opens to provide the visitor with her package (providing protected content). The claims merely automate these abstract functions, which does not confer eligibility. *Alice*, 573 U.S. at 224-25; *Elec. Power*, 830 F.3d at 1354.

The specification similarly describes the abstract idea of authenticated content transfer. It explains the alleged invention as merely "combin[ing] a distance measurement protocol with an authentication protocol." CSOF ¶19. The specification relies on the round-trip time of the signal exchange between the first and second devices to measure distance between the two devices (albeit, without adequately describing that concept, *see* MSJ#3). *See, e.g.*, *id.* ¶29. As discussed in MSJ#3, the specification does not explain how to measure the round-trip time or convert it into distance. *See also, e.g.*, *id.* ¶¶28-29. Combining multiple abstract ideas (here, a timed signal exchange and authenticating devices to provide content) does not make the combination non-abstract. *Elec. Power*, 830 F.3d at 1354; *RecogniCorp*, 855 F.3d at 1327.

The specification likewise lacks detail regarding how the claimed components perform the claimed processes. Instead, it uses generalized language and relies on processes admittedly well-known in the art. For example, it states that "[t]echnology to perform device authentication and encrypted content transfer is available and is

- 6 -

called a secure authenticated channel (SAC)." CSOF ¶17. It states that prior art described "distance-bounding protocols with public-key identification schemes," including a "time measurement using challenge and response bits." *Id.* ¶18. It cites industry standards like "ISO 9798 and 11770" for "key transport mechanisms," "key agreement protocol" and "authentication," and "exchange of secret" processes using a certificate. *Id.* ¶¶21, 23, 27. Even the signaling and encryption protocols were pre-existing and conventional, not specially modified for the alleged invention. *See id.* ¶¶24-26. The specification does not describe any specific components or protocols, nor any unique use for existing components and protocols. Like the claims, the specification merely describes authenticated content transfer.

> ### 2.     This Court already held that authenticated content transfer is abstract, not an improvement in technology

This Court's recent decision in *Realtek* is highly pertinent here. In *Realtek*, this Court held the related '564 patent invalid under § 101. 2025 WL 2105785, at *3; CSOF ¶5. The '564 patent is a descendant of the patents asserted here, all of which share a specification. CSOF ¶¶6-7. The '564 patent claims are directed to the *exact same transaction* as the asserted patents, but recite the process from the second device's perspective rather than the first device's:

| Claim 1 of *Realtek*'s '564 patent | Claim 1 of the '809 patent |
|---|---|
| 1. A second device for receiving delivery of a protected content from a first device, the second device comprising a processor circuit, the processor circuit arranged to execute instructions, the instructions arranged to:<br><br>provide a certificate to the first device prior to receiving a first signal, wherein the first signal is sent by the first device, wherein the certificate is associated with the second device;<br><br>receive the first signal when the certificate indicates that the second device is compliant with at least one compliance rule;<br><br>create a second signal, wherein the second signal is derived from a secret known by the second device;<br><br>provide the second signal to the first device after receiving the first signal, wherein the second signal is received by the first device; and<br><br>receive the protected content from the first device when the first device determines that the second signal is derived from the secret and a time between the sending of the first signal and the receiving of the second signal is less than a predetermined time. | 1. A first device for controlling delivery of protected content to a second device, the first device comprising:<br><br>a memory;<br><br>a processor, said processor arranged to:<br><br>receive a certificate of the second device, the certificate providing information regarding the second device;<br><br>determine whether the second device is compliant with a set of compliance rules utilizing said information provided in said certificate;<br><br>provide a first signal to the second device depending when the second device is determined to be compliant with the set of compliance rules;<br><br>receive a second signal from the second device after providing the first signal;<br><br>determine whether the second signal is derived from a secret known by the first device;<br><br>determine whether a time difference between providing the first signal and receiving the second signal is less than a predetermined time; and<br><br>allow the protected content to be provided to the second device when at least the second signal is determined to be derived from the secret and the time difference is less than the predetermined time. |

CSOF ¶8-9 (color showing correlated claim limitations); *cf.* Ex-AF (July 8, 2025 Tr.) at 23:18-23 ('564 patent claims the exchange from the second device's perspective while other patents claim it from the first device's perspective).

In *Realtek*, this Court held that "[t]he #564 patent covers the abstract idea of combining multiple generic steps—a signal, a certificate, and a time measurement—for authentication, without 'speak[ing] to specific or technical problems or solutions.'" 2025 WL 2105785, at *6; (citing *In re AuthWallet, LLC*, No. 2022-1842, 2023 WL 3330298, at *4 (Fed. Cir. May 10, 2023)); CSOF ¶11. This Court noted that the specification lacked "any information regarding the second device's specific improvement to computer functionality." *Realtek*, 2025 WL 2105785, at *4; CSOF ¶13. It concluded that "[c]ontent transfer, even if based on meeting a condition, is an abstract idea and not an improvement to computer functionality." *Realtek*, 2025 WL 2105785, at *3 (citing *Sanderling Mgmt. Ltd. v. Snap Inc.*, 65 F.4th 698, 703 (Fed. Cir. 2023)); CSOF ¶14.

The claims here are no more specific than the '564 patent's claims and rely on the *same* generally-described components and protocols.[3] While the first device performs certain functions that the second device does not, that distinction does not confer eligibility. For example, the first device determines whether the second

---

[3] The '809 patent also claims a generic "memory" not specifically claimed in the '564 patent, but that component is plainly conventional and thus immaterial to the §101 analysis. Ex-A(claim 1).

device is compliant with a set of rules, determines whether the second signal is derived from a secret, determines whether the round-trip time of the signal exchange is below a predetermined time, and provides the protected content. But, like the '564 patent, the '809 patent fails to explain *how* the first device performs any of those functions. *See Realtek*, 2025 WL 2105785, at *4; CSOF ¶12. For example, it does not claim any particular way of checking for compliance, providing or receiving signals, making the claimed determinations, selecting a predetermined time, or providing the protected content. In short, it claims the mere idea of an authenticated content transfer, not any improvement in the technology to perform such a transfer.

Moreover, there is nothing different about the way the specification describes the second device compared to the first device—both are abstract. As was true for the '564 patent, the common specification lacks any improved technology for the '809 patent. *Realtek*, 2025 WL 2105785, at *4; CSOF ¶13. The specification describes the first device in completely generic terms. For example, Fig. 4 shows a black box device consisting of a non-specific "mP" (microprocessor), "mem" (memory), "Rx" (receiver), and "Tx" (transmitter). CSOF ¶31. The first device merely "check[s] whether the second device 203 is a complaint device," *id.* ¶22; "exchanges a secret with the second device" using known techniques, *id.* ¶¶20, 23, 25-27; "compare[s]" the "received modified signal" using a "microprocessor," *id.* ¶28; and "measures the round trip time between the signal leaving and the signal

- 10 -

returning," *id.* ¶24, which a "microprocessor" can "use[] for determining the physical distance between the first device and the second device," *id.* ¶29. The specification describes performing these functions on generic computers. *Id.* ¶30. It does not describe any specific structures, novel algorithms, or new techniques to perform the claimed functions and, therefore, does not describe any improvement in technology. Instead, the specification shows that *every claimed process* was already well-known. *See, e.g.*, *id.* ¶¶17-19, 21, 23-27.

Accordingly, the common specification is no more descriptive of the first device's operation than of the second device's. The specification hardly distinguishes between the two beyond which side of the exchange they perform. *See, e.g.*, *id.* ¶17 (describing a "secure authenticated channel (SAC)" generally); *id.* ¶18 (referring generally to "integration of distance-bounding protocols with public-key identification schemes"); *id.* ¶19 ("The method combines a distance measurement protocol with an authentication protocol."). Claiming the exchange from the first device's perspective does not make the claims of the '809 patent any less abstract than the claims of the '564 patent given the lack of additional detail about the first device or how it performs any of the claimed functions.

### 3. Federal Circuit cases confirm that the claims are directed to an abstract idea

Beyond its similarity to the *Realtek* patent, claim 1 of the '809 patent is abstract in its own right. As this Court recognized (*Realtek*, 2025 WL 2105785, at

*5), the Federal Circuit has held similar "authentication" claims to be abstract, not any improvement in technology. In *Universal Secure*, the claims were directed to authenticating a user device using "encrypted authentication information … generated by the user device" sent to a "secure registry." 10 F.4th at 1351. If authentication was successful, then the user device and secure registry exchanged information to complete a transaction. *Id.* Those claims were directed to the abstract idea of "(1) authenticat[ing] the user based on … secret information known to the user" and "(2) generat[ing] encrypted authentication information," i.e., "collecting and examining data to enable authentication." *Id.* at 1352. And "[t]here [wa]s no description in the patent of a specific technical solution." *Id.* Instead, this was "merely a collection of conventional data combined in a conventional way that achieves only expected results." *Id.*

Likewise, in *Prism*, the claims were directed to "the abstract idea of 'providing restricted access to resources." 696 F. App'x at 1017. The claimed process included "receiving identity data from a device," "confirming the authenticity" of the data, "determining whether the device is authorized to access the resources requested," and, if so, "permitting access." *Id.* Accordingly, the claims lacked a "concrete, specific solution to a real-world problem." *Id.*; *see also Sanderling*, 65 F.4th at 703 (claims directed to "identify[ing] when a condition is met and … distribut[ing] information based on satisfaction of that condition" were abstract); *Ericsson Inc. v.*

- 12 -

*TCL Commc'n Tech. Holdings Ltd.*, 955 F.3d 1317, 1326 (Fed. Cir. 2020) (claims were directed to the "abstract idea of controlling access to … resources.").

The '809 patent recites similar abstract authentication processes and lacks any recitation of an improved technology. As explained, the claim language relies on generic computer components without details for how to perform the claim limitations.  And the specification describes well-known technology, not anything specialized for the claimed processes.

Measuring distance or using a round-trip time to calculate a distance is abstract, too. In *Electric Power*, the court explained that merely "collecting information" and "analyzing it" were abstract processes. 830 F.3d at 1353; *see also*, *Soundclear Techs., LLC v. Amazon.com, Inc.*, No. 24-CV-01283, 2024 WL 5237648, at *6 (E.D. Va. Nov. 8, 2024) (claim that required "calculat[ing] the user's distance from the device" was abstract, particularly where it did "not explain *how* the device completes this calculation"). The "predetermined time" limitation merely collects round-trip time information and analyzes it to determine a distance.  And, as noted in MSJ#3, the patent never explains *how* to make that determination.

Finally, this Court's distinction in *Realtek* between the claims in *CosmoKey* and the '564 patent applies here, too. 2025 WL 2105785, at *6 (citing *CosmoKey Sols. GmbH & Co. KG v. Duo Sec. LLC*, 15 F.4th 1091 (Fed. Cir. 2021)).  This Court understood that, to the extent *CosmoKey* "draws a line between generic and specific

- 13 -

authorization processes," the '564 patent falls on the "generic" side of the line. *Id.* Likewise for the '809 patent; the claims lack any specific components or processes to perform authenticated content transfer. *E.g.*, Ex-A(7:7-29).

### B. Step 2: The claims do not recite "significantly more" than the abstract idea of authenticated content transfer

Step two of *Alice* asks whether the claims include an "inventive concept sufficient to transform the claimed abstract idea into a patent-eligible application." 573 U.S. at 221 (cleaned up). "[T]he relevant inquiry is not whether the claimed invention as a whole is unconventional or non-routine," but "whether the claim limitations *other than* the invention's use of the ineligible concept to which it was directed were well-understood, routine and conventional." *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290 (Fed. Cir. 2018) (emphasis added). Here, aside from the abstract concept of authenticated content transfer, the claims recite nothing more than generic components performing routine functions, which cannot confer eligibility.

*Realtek* is again instructive. There, this Court concluded that "[t]he #564 patent does not contain additional limitations, whether considered individually or as an ordered combination, that 'transform' the claimed abstract idea into patent-eligible subject matter." *Realtek*, 2025 WL 2105785, at *6; CSOF ¶15. It rejected MCP's reliance on the "combination of certification-based authentication and authenticated distance measurement" as the inventive concept because that was

- 14 -

merely the combination of "nonspecific, conventional authentication techniques in a non-inventive way." *Realtek*, 2025 WL 2105785, at *6 (cleaned up) (citing *Universal Secure*, 10 F.4th at 1346); CSOF ¶16.

That analysis applies here. The '809 patent combines the same conventional authentication techniques as the '564 patent: authentication using a certificate, sharing a secret key, and a timed challenge-response protocol. The specification indicates that these techniques were all well-known. *See, e.g.*, CSOF ¶¶ 13, 17-19, 21, 23-27; *Realtek*, 2025 WL 2105785, at *4 ("To the limited extent that the patent describes the claimed apparatus and its operation, the various embodiments incorporate well-known methods, conventional computer components, and ISO standards.").

In *Realtek*, this Court also rejected MCP's argument that the claims require a specific configuration of the second device, noting that the "patent does not explain *how* the second device's 'processor circuit' is 'arranged' to order the transmission and receipt of these signals." 2025 WL 2105785, at *6; CSOF ¶12. The '809 patent similarly fails to describe *how* the first device is configured to exchange signals or make the claimed determinations. For example, it does not provide any specifics for *how* the processor is arranged to receive a certificate from the second device, send and receive signals, determine compliance with rules, or determine whether the signal round-trip time is below a threshold. Further, the specification admits the

claimed techniques are conventional and merely combine those known techniques. *E.g.*, CSOF ¶¶17-19, 21, 23-27.  Accordingly, there is no transformative inventive concept in the claims.  *See Alice*, 573 U.S. at 225 ("Considered as an ordered combination, the computer components of petitioner's method add nothing that is not already present when the steps are considered separately" (cleaned up)); *Universal Secure*, 10 F.4th at 1353 ("'encrypted authentication data' is merely a combination of known authentication techniques that yields only expected results").

To the extent MCP attempts to argue a factual dispute regarding an inventive concept, that argument fails.  There can be no genuine factual dispute here because the specification itself admits, repeatedly, that the claims combine well-known techniques.  *See Prism*, 696 F. App'x at 1018 (reversing denial of summary judgment where "[t]he patents-in-suit themselves demonstrate the conventional nature of these hardware identifiers").  Moreover, to the extent MCP argues its expert's contrary opinion creates a fact dispute, that argument would be misplaced. Expert testimony contradicting the specification (and this Court's analysis in *Realtek*) cannot create a genuine fact dispute.  *See Move, Inc. v. Real Est. All. Ltd.*, 721 F. App'x 950, 957 (Fed. Cir. 2018) (conclusory expert testimony did not create a genuine fact dispute where the claims did not recite the purported inventive concept).  Thus, summary judgment is appropriate.

## C.    Claim 1 of the '809 patent is representative

Claim 1 of the '809 patent is representative of the at-issue claims; the other claims are "substantially similar and linked to the same ineligible concept." *See Mobile Acuity Ltd. v. Blippar Ltd.*, 110 F.4th 1280, 1290 (Fed. Cir. 2024) (cleaned up); *cf. Realtek*, 2025 WL 2105785, at *2 (treating claim 1 of the '564 patent as representative).  Claim 1 of the '186 patent, the only other asserted independent claim, recites identical functions to claim 1 of the '809 patent in a slightly different order and with even less detail.  CSOF ¶¶2-3.  The asserted dependent claims do not add anything material to the analysis.  Rather, they include further limitations to the claimed signals, transportation protocols, secrets, certificates, and authentication protocols, which are just different aspects of the same abstract idea. *Id.* ¶4.

## VI.    CONCLUSION

For the foregoing reasons, the asserted claims are invalid under § 101 and summary judgment should be granted.

OF COUNSEL:

Chad S. Campbell
PERKINS COIE LLP
2525 E. Camelback Road, Suite 500
Phoenix, AZ  85016
(602) 351-8000

Christina J. McCullough
Antoine McNamara
Theresa H. Nguyen
PERKINS COIE LLP
1301 Second Avenue, Suite 4200
Seattle, WA  98101-3099
(206) 359-8000

Sarah E. Piepmeier
PERKINS COIE LLP
505 Howard Street, Suite 1000
San Francisco, CA  94105-3204
(415) 344-7000

Daniel T. Keese
PERKINS COIE LLP
1120 NW Couch Street, 10th Floor
Portland, OR  97209-4128
(503) 727-2000

 August 22, 2025

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jennifer Ying*

Jennifer Ying (#5550)
Cameron P. Clark (#6647)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jying@morrisnichols.com
cclark@morrisnichols.com

*Attorneys for Defendant Intel Corp.*

## <u>WORD COUNT CERTIFICATION</u>

The undersigned counsel hereby certifies that the foregoing document contains 3,939 words, which were counted by using the word count feature in Microsoft Word, in 14-point Times New Roman font. The word count includes only the body of the document. The word count does not include the cover page, tables of contents, authorities, or exhibits, or the counsel blocks.

*/s/ Jennifer Ying*

_____
Jennifer Ying (#5550)

## CERTIFICATE OF SERVICE

I hereby certify that on August 22, 2025, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on August 22, 2025, upon the following in the manner indicated:

Brian E. Farnan, Esquire                                              *VIA ELECTRONIC MAIL*
Michael J. Farnan, Esquire
FARNAN LLP
919 North Market Street, 12th Floor
Wilmington, DE  19801
*Attorneys for Plaintiff Media Content*
*Protection LLC*

Michael T. Renaud, Esquire                                          *VIA ELECTRONIC MAIL*
Adam S. Rizk, Esquire
Catherine Cheng Xu, Esquire
Courtney Herndon, Esquire
Williams S. Dixon, Esquire
Timothy J. Rousseau, Esquire
Tianyi Tan, Esquire
Michael J. McNamara, Esquire
William A. Meunier, Esquire
Sean M. Casey, Esquire
Gabriella J. Flick, Esquire
Marguerite McConihe, Esquire
MINTZ, LEVIN, COHN, FERRIS,
   GLOVSKY AND POPEO, P.C.
One Financial Center
Boston, MA  02111
*Attorneys for Plaintiff Media Content*
*Protection LLC*

Peter F. Snell, Esquire                          *VIA ELECTRONIC MAIL*
Brad M. Scheller, Esquire
MINTZ, LEVIN, COHN, FERRIS,
  GLOVSKY AND POPEO, P.C.
919 Third Avenue,
New York, NY  10022
*Attorneys for Plaintiff Media Content*
*Protection LLC*

Hannah M. Edge, Esquire                          *VIA ELECTRONIC MAIL*
Adam R. Banes, Esquire
MINTZ, LEVIN, COHN, FERRIS,
  GLOVSKY AND POPEO, P.C.
555 12th Street, NW, Suite 1000
Washington, DC  20004
*Attorneys for Plaintiff Media Content*
*Protection LLC*

Tawfik Goma, Esquire                             *VIA ELECTRONIC MAIL*
MINTZ, LEVIN, COHN, FERRIS,
  GLOVSKY AND POPEO, P.C.
777 Brickell Avenue, Suite 500
Miami, FL  33131
*Attorneys for Plaintiff Media Content*
*Protection LLC*

Nana Liu, Esquire                                *VIA ELECTRONIC MAIL*
MINTZ, LEVIN, COHN, FERRIS,
  GLOVSKY AND POPEO, P.C.
44 Montgomery Street, 36th Floor
San Francisco, CA  94104
*Attorneys for Plaintiff Media Content*
*Protection*
*LLC*

*/s/ Jennifer Ying*
_____
Jennifer Ying (#5550)