IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

MEDIA CONTENT
PROTECTION LLC,

        Plaintiff,

v.

INTEL CORP.,

        Defendant.

Civil Action No. 20-1243-CFC

Brian E. Farnan and Michael J. Farnan, FARNAN LLP, Wilmington, Delaware; Michael T. Renaud, Adam S. Rizk, Michael J. McNamara, Marguerite McConihe, William A. Meunier, Catherine C. Xu, Timothy J. Rousseau, Courtney Herndon, William S. Dixon, Tianyi Tan, Gabriella J. Flick, and Sean M. Casey, MINTZ, LEVIN, COHN, FERRIS, GLOVSKY & POPEO, P.C., Boston, Massachusetts; Peter F. Snell, Brad M. Scheller, and Hannah M. Edge, MINTZ, LEVIN, COHN, FERRIS, GLOVSKY & POPEO, P.C., New York, New York; Adam R. Banes, MINTZ, LEVIN, COHN, FERRIS, GLOVSKY & POPEO, P.C., Washington, District of Columbia; Nana Liu, MINTZ, LEVIN, COHN, FERRIS, GLOVSKY & POPEO, P.C., San Francisco, California; Tawfik A. Goma, MINTZ, LEVIN, COHN, FERRIS, GLOVSKY & POPEO, P.C., Miami, Florida,

    *Counsel for Plaintiff*

Jennifer Ying and Cameron P. Clark, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, Delaware; Chad S. Campbell, PERKINS COIE LLP, Phoenix, Arizona; Christina J. McCullough, Antoine McNamara, and Theresa H. Nguyen, PERKINS COIE LLP, Seattle, Washington; Sarah E. Piepmeier, PERKINS COIE LLP, San Francisco, California

    *Counsel for Defendant*

# MEMORANDUM OPINION

November 25, 2025
Wilmington, Delaware

*[signature]*

COLM F. CONNOLLY
CHIEF JUDGE

Plaintiff Media Content Protection LLC (Media Content) has sued Intel Corp. for infringement of U.S. Patents Nos. 9,436,809 (the #809 patent) and 10,091,186 (the #186 patent). D.I. 92. Pending before me is Intel's Motion for Summary Judgment #1. D.I. 228. Intel argues that it is entitled to summary judgment in its favor because the asserted patents are invalid under 35 U.S.C. § 101 for failing to claim patentable subject matter.

## I.  BACKGROUND

The asserted patents are each titled "Secure Authenticated Distance Measurement" and share the same written description. D.I. 230 ¶ 6; D.I. 248 ¶ 6. The parties agree that claim 1 of the #809 patent is representative of the asserted claims of both patents. D.I. 229 at 17; D.I. 247 at v n.‡. That claim reads:

> A first device for controlling delivery of protected
> content to a second device, the first device comprising:
>
> a memory;
>
> a processor, said processor arranged to:
>
> receive a certificate of the second device, the
> certificate providing information regarding the
> second device;

> determine whether the second device is compliant with a set of compliance rules utilizing said information provided in said certificate;
>
> provide a first signal to the second device depending when the second device is determined to be compliant with the set of compliance rules;
>
> receive a second signal from the second device after providing the first signal;
>
> determine whether the second signal is derived from a secret known by the first device;
>
> determine whether a time difference between providing the first signal and receiving the second signal is less than a predetermined time; and
>
> allow the protected content to be provided to the second device when at least the second signal is determined to be derived from the secret and the time difference is less than the predetermined time.

#809 patent at claim 1.

## II. LEGAL STANDARDS

### A. Motion for Summary Judgment

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material facts and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "could affect the outcome of the proceeding." *Roth v. Norfalco LLC*, 651 F.3d 367, 373 (3d Cir. 2011) (internal quotation marks and citation omitted). "All justifiable inferences are to be drawn in the nonmovant's favor but the mere existence of some evidence

2

in support of the nonmovant is insufficient to dent a motion for summary judgment." *Wharton v. Danberg*, 854 F.3d 234, 241 (3d Cir. 2017) (internal quotation marks and citation omitted). "[E]nough evidence must exist to enable a jury to reasonably find for the nonmovant on the issue." *Id.* (internal quotation marks and citation omitted).

      **B.**    **Patent-Eligible Subject Matter**

Section 101 of the Patent Act defines patent-eligible subject matter: "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101.

There are three judicially created limitations on the literal words of § 101. The Supreme Court has long held that laws of nature, natural phenomena, and abstract ideas are not patentable subject matter. *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014). These exceptions to patentable subject matter arise from the concern that the "[m]onopolization" of "the[se] basic tools of scientific and technological work" "might tend to impede innovation more than it would tend to promote it." *Id.* (internal quotation marks and citations omitted). Abstract ideas include mathematical formulas and calculations. *Gottschalk v. Benson*, 409 U.S. 63, 71–72 (1972).

3

"[A]n invention is not rendered ineligible for patent [protection] simply because it involves an abstract concept." *Alice*, 573 U.S. at 217. "Applications of such concepts to a new and useful end . . . remain eligible for patent protection." *Id.* (internal quotation marks, alterations, and citations omitted). But "to transform an unpatentable law of nature [or abstract idea] into a patent-eligible application of such a law [or abstract idea], one must do more than simply state the law of nature [or abstract idea] while adding the words 'apply it.'" *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 72 (2012) (emphasis removed).

In *Alice*, the Supreme Court made clear that the framework laid out in *Mayo* for determining if a patent claims eligible subject matter involves two steps. The court must first determine whether the patent's claims are directed to a patent-ineligible concept—i.e., are the claims directed to a law of nature, natural phenomenon, or abstract idea? *Alice*, 573 U.S. at 217. If the answer to this question is no, then the patent is not invalid for teaching ineligible subject matter. If the answer to this question is yes, then the court must proceed to step two, where it considers "the elements of each claim both individually and as an ordered combination" to determine if there is an "inventive concept—i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Id.* at 217–18 (alteration in original) (internal quotations and citations omitted).

The two steps are "plainly related" and "involve overlapping scrutiny of the content of the claims." *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016).

Issued patents are presumed to be valid, but this presumption is rebuttable. *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 96 (2011). Subject-matter eligibility is a matter of law, but the party challenging a patent's validity must show underlying facts by clear and convincing evidence. *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018).

## III. DISCUSSION

I agree with Intel that the asserted claims of the #809 and #186 patents are invalid under § 101 because they are directed to the abstract idea of an authenticated content transfer and do not contain an inventive concept that transforms this abstract idea into a patent-eligible application.

### A. *Alice* Step One—Whether the Claims are Directed to Patent-Ineligible Subject Matter

Claim 1 of the #809 patent claims a "first device for controlling delivery of protected content to a second device." The first device is comprised of "a memory" and "a processor." The processor is arranged to work as follows: First, it receives a "certificate of [a] second device." That certificate "provid[es] information regarding the second device" that the processor "utilize[es]" to "determine whether the second device is compliant with a set of compliance rules."

5

If the processor determines that the second device is compliant with the rules, it "provide[s] a first signal to the second device," and "after providing th[at] first signal," it "receive[s] a second signal from the second device." The processor then "determines[s]" (1) "whether the second signal is derived from a secret known by the first device," and (2) "whether a time difference between providing the first signal and receiving the second signal is less than a predetermined time." Finally, if the processor determines that the second signal is derived from the secret and the time difference is less than the predetermined time, it "allow[s] the protected content to be provided to the second device."

Thus, claim 1 claims nothing more than a device that is capable of participating in a process for authenticated content transfer. Authentication, i.e., "[c]ontrolling access to resources," is an abstract idea that "is pervasive in human activity, whether in libraries (loaning materials only to card-holding members), office buildings (allowing certain employees entrance to only certain floors), or banks (offering or denying loans to applicants based on suitability and intended use)." *Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*, 955 F.3d 1317, 1327 (Fed. Cir. 2020). Content transfer, even if based on meeting a condition, is similarly an abstract idea and not an improvement to computer functionality. *See Sanderling Mgmt. Ltd. v. Snap Inc.*, 65 F.4th 698, 703 (Fed. Cir. 2023) ("[P]roviding information . . . based on meeting a condition," specifically, the

6

"user's location," is an abstract idea); *Intell. Ventures I LLC v. Cap. One Bank*, 792 F.3d 1363, 1369–70 (Fed. Cir. 2015) ("[C]ustomizing [and providing] information based on (1) information known about the user and (2) navigation data" is an abstract idea). Claim 1, then, is directed to the patent-ineligible concept of an abstract idea.

Media Content insists that the asserted claims "are directed to a specific technical improvement to then-existing computer systems, and are therefore not directed to an unpatentable abstract idea." D.I. 247 at 9–10. But it does not identify in the claims or anywhere else in the asserted patents' specifications a specific solution to a technological problem. This failure is understandable, as the patents' shared written description discloses no specific means or method that improves the relevant technology, but instead, like the asserted claims, is "directed to a result or effect that itself is the abstract idea and merely invoke[s] generic processes and machinery." *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1314 (Fed. Cir. 2016). Neither the asserted claims nor the patents' written description recite any specialized components or protocols for performing authentication or content transfer, and nowhere in the specifications do the patents disclose an improvement to computer technology.

Media Content argues that "[t]he Patents' improvements to the *Brands-Chaum* computer are embodied by the claimed transmitter [i.e., the first device],

7

which must be configured to use a receiver's certificate to determine the receiver's compliance with compliance rules and then determine the physical proximity of the receiver using the RTT [i.e., round trip time] of signals, where the RTT is authenticated by using a shared secret." D.I. 247 at 4.  (The parties agree that the *Brands-Chaum* computer "exemplified" "distance-bounding protocols," D.I. 248 ¶ 34; D.I. 266 ¶ 34, and that "[t]o achieve distance confirmation," the *Brands-Chaum* computer "use[d] . . . a large number of rapid single-bit exchanges," D.I. 248 ¶ 35; D.I. 266 ¶ 35.)  But Media Content does not explain how the asserted claims technologically improved the transmitter or the *Brands-Chaum* device.  And, more importantly, it does not identify where in the claims or written description a specific technological improvement of the transmitter or *Brands-Chaum* device is disclosed.  And again, that failure makes sense, as the patents' shared written description itself makes clear that at the time the applications for the patents were filed, "[t]echnology to perform device authentication and encrypted transfer [wa]s available and [wa]s called a secure authenticated channel (SAC)." #809 patent at 2:8–10.  To the limited extent that the patents describe the claimed device and its operation, the various embodiments incorporate well-known methods, conventional computer components, and ISO standards.  *See, e.g.*, #809 patent at 3:15–16 ("In a specific embodiment the first signal is a spread spectrum signal."); 3:30–35 ("In a specific embodiment the first signal and the common

secret are bit words and the second signal comprises information being generated by performing an exclusive OR operation (XOR) between the bit words. Thereby, it is a very simple operation . . . resulting in demand for few resources . . . ."); 3:52–55 ("The secret could be shared using e.g. key transport mechanisms as described in ISO 11770-3. Alternatively, a key agreement protocol could be used, which e.g. is also described in ISO 11770-3."); 5:48–62 ("The signal used for the distance measurement may be a normal data bit signal, but also special signals other than for data communication may be used . . . . The authentication . . . and the exchange of secret . . . could be performed using the protocols described in some known ISO standards e.g. ISO 9798 and ISO 11770.").

In my view, claim 1 of the #809 patent is in all material respects analogous to the claim for an electronic device found to be ineligible for patentability under § 101 by the Federal Circuit in *Universal Secure Registry LLC v. Apple Inc.*, 10 F.4th 1342 (Fed. Cir. 2021). The claim at issue in *Universal Secure Registry* was "directed to an electronic ID device that includes a biometric sensor, user interface, communication interface, and processor working together to (1) authenticate the user based on two factors—biometric information and secret information known to the user—and (2) generate encrypted authentication information to send to the secure registry through a point-of-sale device." *Id.* at 1352. The court found telling that "[t]here [wa]s no description in the patent

9

of a specific technical solution by which the biometric information or the secret information is generated, or by which the authentication information is generated and transmitted," and the court held that the patent's claims "recite[d] conventional actions in a generic way—e.g., authenticating a user using conventional tools and generating and transmitting that authentication—without improving any underlying technology." *Id.* (alteration, quotation marks, and citation omitted). In this case, the #809 patent similarly provides no description of a specific technical solution by which the first device is arranged to transmit protected information to the second device. Accordingly, the claims are directed to an abstract idea under *Alice* step one.

Claim 1 is also analogous to the method claims found to be invalid under § 101 by the Federal Circuit in *Prism Techs. LLC v. T-Mobile USA, Inc.*, 696 F. App'x 1014 (Fed. Cir. 2017). The claims at issue in *Prism* taught "an abstract process" that included: "(1) receiving identity data from a device with a request for access to resources; (2) confirming the authenticity of the identity data associated with that device; (3) determining whether the device identified is authorized to access the resources requested; and (4) if authorized, permitting access to the requested resources." *Id.* at 1017. The Federal Circuit held that the claimed methods were "abstract," not "concrete" or "specific," and were invalid because

10

they were directed to the abstract idea of "providing restricted access to resources." *Id.*

The Federal Circuit cases relied upon by Media Content in its briefing are, with one exception, not applicable here because the patents at issue in those cases offered specific technical improvements to computer security or other computer functions. *See Koninklijke KPN N.V. v. Gemalto M2M GmbH*, 942 F.3d 1143, 1146 (Fed. Cir. 2019) (finding claims eligible because they were directed to "varying the way check data is generated by varying the permutation applied to different data blocks"); *Ancora Techs., Inc. v. HTC Am., Inc.*, 908 F.3d 1343, 1348–49 (Fed. Cir. 2018) (finding claim eligible because it was directed to storing a license record in a "particular, modifiable, non-volatile portion of [a] computer's BIOS . . . for verification by interacting with the distinct computer memory that contains the program to be verified"); *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1295 (Fed. Cir. 2020) (finding claim eligible that went "beyond what is required simply by the claim term 'multi-level . . . security'" by claiming an "object-oriented key manager," and the use of a "label" as well as encryption for access management (alteration in original)); *Uniloc USA, Inc. v. LG Elecs. USA, Inc.*, 957 F.3d 1303, 1307 (Fed. Cir. 2020) (finding claims eligible that were directed to reducing the "latency experienced by parked secondary stations in communication systems" by adding "an additional data field for polling"). The improvements to

11

computer functioning claimed in these cases demonstrated "the specificity required to transform a claim from one claiming only a result to one claiming a way of achieving" that result. *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018).

The one exception is *CosmoKey Sols. GmbH & Co. KG v. Duo Sec. LLC*, 15 F.4th 1091 (Fed. Cir. 2021).[1] In *CosmoKey*, as in *Universal Secure Registry* and *Prism*, the challenged claims were directed to technology configured to verify a user's identity to permit access to a transaction. *See CosmoKey*, 15 F.4th at 1093–94. The Federal Circuit distinguished *CosmoKey* from *Universal Secure Registry* on the basis that the asserted claims in *Universal Secure Registry* "were directed to the abstract idea of combining multiple conventional authentication techniques,"

---

[1] The Federal Circuit decided *CosmoKey* at the second step of *Alice*, but the distinction between the first and second steps of the *Alice* analysis is porous to the extent that it is decipherable. "[T]here is considerable overlap between step one and step two, and in some situations this analysis could be accomplished without going beyond step one." *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1294 (Fed. Cir. 2016); *see CosmoKey*, 15 F.4th at 1101 (Reyna, J., concurring) ("I agree with my colleagues that '[t]he '903 Patent claims and specification recite a specific improvement to authentication that increases security, prevents unauthorized access by a third party, is easily implemented, and can advantageously be carried out with mobile devices of low complexity.' . . . But this is a step-one rationale."); *see also Smart Sys. Innovations, LLC v. Chicago Transit Auth.*, 873 F.3d 1364, 1382 n.2 (Fed. Cir. 2017) (Linn, J., dissenting in part and concurring in part) (expressing "serious[] doubt" that "the boundary between steps one and two can somehow be defined").

and that the increased security was "no greater than the sum of the security provided by each technique alone." *Id.* at 1096. The court held that the relevant patent in *CosmoKey,* by contrast, "depart[ed] from earlier approaches" in a way that was not simply cumulative. *Id.* I have read *Universal Secure Registry* and *CosmoKey* numerous times, but I confess that I am unable to understand how either the problem or the solution described in *CosmoKey* is more "specific" or "technological" than those described in *Universal Secure Registry*. But to the extent that the relevant case law draws a line between generic and specific authorization processes, the #809 patent is more like the patents asserted in *Universal Secure Registry* and *Prism* than it is like that in *CosmoKey*. The #809 patent covers the abstract idea of combining multiple generic steps—a signal, a certificate, and a time measurement—for authentication, without "speak[ing] to specific or technical problems and solutions." *In re AuthWallet, LLC*, 2023 WL 3330298, at *4 (Fed. Cir. May 10, 2023).

In sum, because neither claim 1 nor anything else in the #809 patent's specification explains how the claimed device is configured to achieve the claimed authenticated content transfer and because claim 1 relies instead on generic components (i.e., a transmitter with memory and a processor) behaving conventionally, the claim is directed to the abstract idea of authenticated content transfer.

13

### B. *Alice* Step Two—Whether the Claims Contain an Additional Inventive Concept

The #809 patent does not contain additional limitations, whether considered individually or as an ordered combination, that "transform" the claimed abstract idea into patent-eligible subject matter. *Mayo*, 566 U.S. at 72. The claimed device therefore fails step two. *See Alice*, 573 U.S. at 222–23, 225 (considering at step two "[t]he introduction of a computer into the claims" and holding that the use of "a generic computer to perform generic computer functions" does not provide the requisite inventive concept to satisfy step two); *Prism Techs.*, 696 F. App'x at 1017–18 (holding that, "[v]iewed as an ordered combination, the asserted claims recite[d] no more than the sort of perfectly conventional generic computer components employed in a customary manner" that did "not rise to the level of an inventive concept" and therefore did not "transform the abstract idea into a patent-eligible invention" under *Alice* step two (quotation marks and citation omitted)).

Media Content argues that the asserted claims' "certificate-based authentication" and "proximity determination using the RTT of signals modified by a shared secret" elements individually and as an ordered combination "were not conventional and demonstrate that the claims contain an inventive concept." D.I. 247 at 17. But it does not point to anything in the #809 patent that discloses how to use a certificate to determine whether a receiver is compliant with compliance rules (i.e., to authenticate) or how to use a signal modified by a shared

14

secret to determine proximity. Media Content insists that device claimed in claim 1 "perform[s] a specific type of authentication—using a certificate from the receiver to determine compliance with compliance rules . . . —and then a specific type of authenticated proximity determination—determining that an RTT is less than a time selected to ensure that the devices are physically proximate where the RTT is authenticated by modifying a signal using a shared secret that enables the transmitter to confirm that it is determining the proximity of the receiver and not some other (unauthorized) device." D.I. 247 at 10–11. But it never identifies in its briefing, and the patent does not disclose, a "specific type" of either authentication or authenticated proximity determination, and adding two abstract ideas together does not create a non-abstract combination. *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017).

Finally, citing *Intel Corp. v. Koninklijke Philips N.V.*, 2024 WL 725243 (Fed. Cir. Feb. 22, 2024), Media Content argues that "the Federal Circuit and [Patent Trial And Appeal Board (PTAB)] already determined [that] the claims [of the #809 patent] are an improvement on the then-existing '*Brands-Chaum*' computer that was the basis for Intel's earlier failed validity challenge," D.I. 247 at 2, and that "for at least the reasons already identified by the Federal Circuit and PTAB, a jury could reasonably find that Intel has failed to meet its burden of proving by clear and convincing evidence that the Patents' claims are directed to

conventional combinations of conventional elements, and summary judgment is therefore inappropriate," D.I. 247 at 1 (emphasis removed).  But the validity challenge before the Federal Circuit and PTAB in *Intel* was for obviousness, 2024 WL 725243, at *1, and the findings the Federal Circuit and PTAB made with respect to novelty and nonobviousness in that case are irrelevant to the question of patent eligibility, *Diamond v. Diehr*, 450 U.S. 175, 188–89 (1981) ("The 'novelty' of any element or steps in a process, or even of the process itself, is of no relevance in determining whether the subject matter of a claim falls within the § 101 categories of possibly patentable subject matter."); *Rsch. Corp. Techs., Inc. v. Microsoft Corp.*, 627 F.3d 859, 868 (Fed. Cir. 2010) ("[T]he Supreme Court advised that section 101 eligibility should not become a substitute for patentability analysis related to prior art, adequate disclosure, or other conditions and requirements of Title 35.").  Even if claim 1 is not invalid for obviousness, it lacks an inventive concept that removes it from the realm of abstract ideas and therefore it is invalid under § 101. *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1152 (Fed. Cir. 2016).

## IV.   CONCLUSION

For the reasons discussed above, the #809 and #186 patents are directed toward an unpatentable abstract idea and lack an inventive concept that would

make their subject matter eligible for patentability.  Accordingly, they are invalid under § 101 and I will grant Intel's Motion for Summary Judgment #1 (D.I. 228).

The Court will enter an Order consistent with this Memorandum Opinion.